T.C. Memo. 2015-115

UNITED STATES TAX COURT

RUEY READ, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16875-13.                           Filed June 24, 2015.

Ruey Read, pro se.

<u>Jeremy D. Cameron</u> and <u>A. Gary Begun</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NEGA, <u>Judge</u>:  Respondent determined a deficiency in petitioner's Federal

income tax of $12,531 and a section 6662(a) penalty of $2,506 for the 2011 tax

year.[1]  Specifically, respondent determined that petitioner failed to report $52,089

_____

[1]Unless otherwise indicated, all section references are to the Internal
                                                              (continued...)

**[*2]** of income from stock sales, $323 in capital gains income, and $433 in taxable dividend income for 2011.[2] Petitioner contends that her ex-husband, Dale Bicher, committed identity theft and purchased and sold stocks in her name without her knowledge.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Florida when the petition was filed.

In 1998 a handwritten application was submitted to USAA to open a checking account in petitioner's name. Petitioner's signature appeared on the application, and she was listed as the sole account holder. Mr. Bicher was listed as petitioner's agent, and he wrote and signed checks on the account.

On January 17, 2009, a brokerage account with optionsXpress, Inc. (OptionsXpress), was opened in petitioner's name. Petitioner was listed as the sole account holder. The account application contained her signature and a copy

---

[1](...continued)
Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent also determined an increase in petitioner's child tax credit. This is a computational issue and will be resolved by our decision with respect to petitioner's unreported income.

[*3] of her signed driver's license. That same day, petitioner signed an OptionsXpress power of attorney form authorizing Mr. Bicher to buy and sell stocks on the OptionsXpress account. On their jointly filed 2009 Federal income tax return petitioner and Mr. Bicher reported a $7,007 stock sale from the OptionsXpress account.

In July 2010 petitioner and Mr. Bicher separated. In June 2011 the address for the OptionsXpress account was changed to a post office box address controlled by petitioner and petitioner's daughter. OptionsXpress sent monthly statements to this updated address that reflected account activity such as stock sales and dividends received. That same month, petitioner changed the address for the USAA checking account to a post office box address solely controlled by her. USAA sent monthly statements to this updated address. At least one statement reflected a disbursement from OptionsXpress.

On July 22, 2013, petitioner timely filed a petition with the Court in response to the notice of deficiency that respondent issued on April 29, 2013. In the petition, petitioner alleged that Mr. Bicher fraudulently opened the OptionsXpress account and the USAA checking account in her name without her knowledge.

**[*4]** At trial petitioner claimed that Mr. Bicher traced her signature from her driver's license onto the OptionsXpress application and the power of attorney form. She testified that when she jointly filed her 2009 tax return, she merely signed the return and was not aware of the stock sale from the OptionsXpress account in that year. She also stated that when she changed the address of the USAA checking account, she thought she was changing the address of her USAA car insurance account.

In the notice of deficiency issued to petitioner and Mr. Bicher for the tax year 2011 upon which this case is based, respondent, among other things, calculated petitioner and Mr. Bicher's deficiency on a joint return basis. Petitioner and respondent have now stipulated that petitioner and Mr. Bicher did not file a joint return for 2011 and that petitioner is not entitled to innocent spouse relief for 2011.

OPINION

I.    <u>Petitioner's Tax Liability</u>

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer has the burden of proving it incorrect. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). In cases involving unreported income, this Court has recognized an exception to this rule where the

**[*5]** Commissioner introduces no substantive evidence and relies solely on the presumption of correctness. Jackson v. Commissioner, 73 T.C. 394, 401 (1979). However, this exception is limited and does not apply where, as in this case, the Commissioner has provided a minimal evidentiary foundation. Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), aff'g T.C. Memo. 1991-636.

Section 61(a) defines gross income as "all income from whatever source derived", including gains from dealings in property and dividends. See sec. 61(a)(3), (7). Gains made through the purchase and sale of stock are taxable income, and gain is generally measured by the difference between the purchase price and the selling price. Sec. 1001(a); Helvering v. Rankin, 295 U.S. 123, 125 (1935). Tax on the sale of stock is laid upon the person who owns the stock producing the income. Joyce v. Commissioner, 42 T.C. 628, 636-637 (1964).

Respondent used petitioner's brokerage account and checking account records to determine that petitioner received $52,089 of income from stock sales, $323 in capital gains, and $433 in taxable dividends for the 2011 tax year. Petitioner claims she was the victim of identity theft. She claims she did not know of the OptionsXpress brokerage account in her name or of the USAA checking

**[*6]** account used to deposit the proceeds from the stock transactions. We do not believe a fraud defense applies in this case.

Petitioner's OptionsXpress account application required her signature and a copy of her signed driver's license. Her signature on the power of attorney form that authorized Mr. Bicher to buy and sell stocks on the account is consistent with her signature on her driver's license and on the OptionsXpress account application. It seems implausible that Mr. Bicher would have traced the miniature version of her signature on her driver's license to create a larger replica on the account application and the power of attorney form as petitioner claims. Petitioner also reported a stock sale from the OptionsXpress account on her 2009 jointly filed income tax return. Furthermore, she received monthly statements from this account to her solely controlled post office box address during the year at issue. With nothing more, the Court finds that she at least had knowledge of the OptionsXpress account.

Petitioner's testimony regarding her knowledge (or lack thereof) of the USAA checking account also seems suspect. Petitioner testified that she did not know a USAA checking account was opened in her name. She claims that she opened only a USAA car insurance account. Petitioner's USAA checking account was opened approximately 10 years ago, and the application to open the account

[*7] was handwritten. In order for Mr. Bicher to open the account without petitioner, he would have had to both sign his name on the application as her agent and fraudulently sign her name as the account owner. This scenario seems dubious at best. Furthermore, the USAA checking account was opened approximately 10 years before petitioner was alerted to any possible fraud on the account. We find petitioner's claim to have recently discovered the existence of the account less likely than that she had known of the account since its inception and belatedly came to be suspicious of Mr. Bicher's handling of their financial affairs.

We find that for the year at issue petitioner owned and controlled both the OptionsXpress brokerage account used to sell stocks and generate taxable dividends and the USAA checking account where the proceeds were deposited. Accordingly, we sustain respondent's determination.

II.    Section 6662(a) Penalty

Section 6662(a) and (b)(2) imposes a 20% accuracy-related penalty on any portion of an underpayment of Federal income tax which is attributable to a substantial understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

[*8]   Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties.  Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  Respondent has computed the deficiency, and the understatement of income tax is greater than $5,000, which is greater than 10% of the tax required to be shown on petitioner's return for 2011.  Thus, respondent's burden of going forward has been satisfied.

Once the Commissioner has met the burden of production, the taxpayer must come forward with persuasive evidence that the penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, 116 T.C. at 448-449.  The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all of the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner set forth no specific facts to show that the penalty should not apply.  For example, she did not offer any testimony or other evidence to show that she relied on professional tax advice. See id.  We accordingly sustain respondent's imposition of an accuracy-related penalty for the 2011 tax year.

**[\*9]**   To reflect the foregoing, and the parties' stipulation that petitioner and Dale B. Bicher did not file a joint return for 2011,

<u>Decision will be entered</u>

<u>under Rule 155</u>.